UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAUL PARSHALL,<br><br>    Plaintiff,<br><br>v.<br><br>SELECT BANCORP, INC., J. GARY CICCONE, ALICIA S. HAWK, GERALD W. HAYES, WILLIAM L. HEDGEPETH, II, RONALD V. JACKSON, JOHN W. MCCAULEY, CARLIE C. MCLAMB, JR., V. PARKER OVERTON, SHARON L. RAYNOR, K. CLARK STALLINGS, and W. LYNDO TIPPETT,<br><br>    Defendants. | Case No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Paul Parshall ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This action is brought by Plaintiff against Select Bancorp, Inc. ("Select" or the "Company") and the members of Select's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Select will be acquired by First Bancorp ("First Bancorp") (the "Proposed Transaction").

2. On June 1, 2021, Select and First Bancorp issued a joint press release announcing that they had entered into an Agreement and Plan of Merger and Reorganization dated June 1, 2021 (the "Merger Agreement"). Under the terms of the Merger Agreement, each Select shareholder will receive 0.408 shares of First Bancorp common stock for each Select share they own (the "Merger Consideration"). The Proposed Transaction is valued at approximately $314.3 million.

3. On July 28, 2021, Select filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Select stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the financial projections for Select, First Bancorp, and the pro forma combined company, which are wholly omitted, and the data and inputs underlying the financial analyses performed by the Company's financial advisor Raymond James & Associates, Inc. ("Raymond James"); (ii) Raymond James's potential conflicts of interest; and (iii) the background of the Proposed Transaction. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Select stockholders need such information in order to make a fully informed decision whether to vote in favor of the Proposed Transaction.

4. In short, unless remedied, Select's public stockholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Moreover, Select's common stock trades on the New York Stock Exchange, which is headquartered in this District, rendering venue in this District appropriate.

**THE PARTIES**

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Select.

9. Defendant Select is a North Carolina corporation, with its principal executive offices located at 700 West Cumberland Street, Dunn, North Carolina 28334. Select is the holding company for Select Bank & Trust Company ("Select Bank" or the "Bank"). Select's shares trade on the Nasdaq Global Select Market under the ticker symbol "SLCT."

10. Defendant J. Gary Ciccone ("Ciccone") has been Chairman of the Board since April 2008 and a director of the Company since 2003.

11. Defendant Alicia S. Hawk ("Hawk") has been a director of the Company since 2014.

12. Defendant Gerald W. Hayes ("Hayes") has been a director of the Company since 2003.

13. Defendant William L. Hedgepeth, II ("Hedgepeth") has been President, Chief Executive Officer ("CEO"), and a director of the Company since 2007.

14. Defendant Ronald V. Jackson ("Jackson") has been a director of the Company since 2012.

15. Defendant John W. McCauley ("McCauley") has been a director of the Company since 2003.

16. Defendant Carlie C. McLamb, Jr. ("McLamb") has been a director of the Company since 2010.

17. Defendant V. Parker Overton ("Overton") has been a director of the Company since 2014.

18. Defendant Sharon L. Raynor ("Raynor") has been a director of the Company since 2009.

19. Defendant K. Clark Stallings ("Stallings") has been a director of the Company since 2014.

20. Defendant W. Lyndo Tippett ("Tippett") has been a director of the Company since 2008.

21. Defendants identified in paragraphs 10-20 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

22. First Bancorp is a North Carolina corporation with its principal executive offices located at 300 SW Broad Street, Southern Pines, North Carolina, 28387. First Bancorp is the

fifth largest bank holding company headquartered in North Carolina. First Bancorp's principal activity is the ownership and operation of First Bank, a state-chartered bank. At March 31, 2021, First Bancorp had total consolidated assets of approximately $7.7 billion, total loans of approximately $4.6 billion, total deposits of approximately $6.7 billion, and shareholders' equity of approximate $0.9 billion. First Bancorp's common stock trades on the New York Stock Exchange under the ticker symbol "FBNC."

**SUBSTANTIVE ALLEGATIONS**

**Background of the Company**

23. Select was incorporated under the laws of the State of North Carolina on May 14, 2003, and became the holding company for the Bank on September 19, 2003. Select Bank conducts business from 22 banking locations in North Carolina, South Carolina and Virginia. It is the ninth largest bank holding company headquartered in North Carolina. At March 31, 2021, Select had total consolidated assets of approximately $1.8 billion, total loans of approximately $1.3 billion, total deposits of approximately $1.6 billion, and shareholders' equity of approximate $212 million. Select's principal activity is the ownership and operation of Select Bank, a state-chartered bank with its main office in Dunn, North Carolina. As of December 31, 2020, the Company employed 246 full time equivalent employees.

24. On August 2, 2021, the Company announced its second quarter 2021 financial results. For the quarter ended June 30, 2021, Select reported net income of $5.6 million with basic and diluted earnings per share of $0.33 and $0.32, respectively, compared to net income of $681,000 with basic and diluted earnings per share of $0.04 for the same quarter ended June 30, 2020. Total assets, deposits, and gross loans for the Company as of June 30, 2021 were $1.9 billion, $1.6 billion, and $1.3 billion, respectively, compared to total assets of $1.6 billion, total

deposits of $1.3 billion, and gross loans of $1.2 billion as of the same date in 2020. Net interest income was $16.0 million and $11.9 million for the second quarter of 2021 and 2020, respectively. On a comparative quarter basis, the Company's total interest income was positively affected by increased loan balances due to branch acquisitions and organic growth. Non-interest income for the quarter ended June 30, 2021 was $1.9 million, an increase of $484,000 from $1.4 million in the second quarter of 2020. Reflecting on the results and looking to the future, defendant Hedgepeth stated:

> We are pleased to announce our second quarter results are very strong, following closely with the results for the first quarter of this year. We had second quarter earnings of $5.6 million including a recovery of loan loss provision of $459,000. Total assets have grown $42.5 million this quarter and deposits grew $38.0 million during the second quarter. Gross loans declined by $9.9 million, which was primarily due to PPP loans that were forgiven. Fee income for the quarter from our mortgage and SBA departments have remained strong and increased by $77,000 over the second quarter of 2020. As always, we are focused on our net interest margin and are pleased to report it was 3.86% for the first half of 2021. Maintaining our margin at this level is challenging and was difficult to accomplish in the current interest rate environment, especially considering the effects of the COVID-19 pandemic on the economy. The strategic initiatives we have been implementing over the last several quarters are proving to be successful and are reflected in our ROAA of 1.33% and ROAE of 11.12% for the first half of 2021. We are reaping the benefits of those initiatives and the efficiencies we have gained from those efforts. Our efficiency ratio for the first half of 2021 was 59.72%.
>
> As you can see, our asset quality numbers continue to reflect a very low level of net charge offs for our loan portfolio with past dues, nonaccruals and foreclosed real estate remaining at historically low levels for our institution as of June 30, 2021. We believe this is due to our ongoing interaction with our customers that has allowed us to work closely with them to ensure resources are available to those customers still navigating the effects of the COVID-19 pandemic. Our staff has dedicated a tremendous number of hours and has worked diligently with our customers to utilize the SBA's PPP loan program and loan modifications as the economy continues to confront challenges associated with the pandemic. For all phases of the SBA's PPP loan program, we originated 1,822 loans amounting to $137.1 million that assisted our communities as they dealt with this event. At the end of June 2021, we had approximately $41.5 million comprising 605 PPP loans outstanding that are in the process of being forgiven. At the height of the pandemic we granted 419 loan deferrals related to COVID-19 for $219.6 million.

As of June 30, 2021, we had 8 loan deferrals related to COVID-19 totaling $2.2 million. Our allowance for loan losses was reduced slightly from year-end, but we believe it is sufficient to absorb any losses in the near future. With the rise of new variants, the country is not out of the pandemic, so we will continue to provide additional staff resources, together with an 'all hands-on deck' philosophy to facilitate superior customer service. We will continue to work with our customers by assisting them with any stimulus programs in the future.

All of our branch lobbies have remained open for business transactions while keeping the health and safety of our customers and employees as our primary objective. That will not change as we quickly address any changes related to the pandemic and remain watchful for adjustments in the economy that affect the operational activities of our customers and our branches. We will address and accommodate as needed the effects of social distancing measures, occupancy limitations and other challenges that influence how we interact with our customers. We continue to believe crafting financial solutions enables and enhances our employees' relationships with their customers to further strengthen business partnerships during these times.

**The Proposed Transaction**

25.     On June 1, 2021, Select and First Bancorp issued a joint press release announcing the Proposed Transaction, which states, in relevant part:

> SOUTHERN PINES, N.C. and DUNN, N.C., June 1, 2021 -- First Bancorp (Nasdaq: FBNC), the parent company of First Bank, and Select Bancorp, Inc. ("Select") (Nasdaq: SLCT), the parent company of Select Bank and Trust Company ("Select Bank"), announced today the signing of a definitive merger agreement under which First Bancorp will acquire Select in an all-stock transaction with a total current value of approximately $314.3 million, or $18.10 per share, based on First Bancorp's stock price as of May 28, 2021.
>
> The merger agreement has been unanimously approved by the boards of directors of each company. The transaction is expected to close in the fourth quarter of 2021 and is subject to customary conditions, including shareholder and regulatory approval. Subject to the terms of the merger agreement, Select shareholders will receive 0.408 shares of First Bancorp's common stock for each share of Select common stock.
>
> Select Bank currently operates twenty-two banking locations in North Carolina, South Carolina, and Virginia and has the leading community bank market share in Fayetteville, NC and a presence in the key North Carolina growth markets of Raleigh, Charlotte, and Wilmington. As of March 31, 2021, Select reported assets of $1.8 billion, loans of $1.3 billion, and deposits of $1.6 billion. The

acquisition complements First Bank's existing footprint and provides entry into several new markets.

"Select Bank is a high quality institution with a long-standing history of service and strong community banking relationships," said Richard Moore, Chief Executive Officer of First Bancorp. "We are thrilled that the Select Bank team will be joining First Bank, and we look forward to the opportunity to serve their customers."

Upon completion of the acquisition, the combined company is expected to have over $9 billion in assets, $6 billion in loans, and $8 billion in deposits. This transaction represents an opportunity to further cement First Bank's position as the preeminent community bank in North Carolina in a way that is attractive for all stakeholders involved.

"We are very excited about this partnership and the unique opportunity it presents," said Bill Hedgepeth, President, CEO, and Director of Select. "We have long admired First Bancorp, and our combined company will be positioned to capitalize on an enhanced presence in exceptional markets, talent, and financial strength."

Keefe, Bruyette & Woods, Inc. served as financial advisor to First Bancorp and Brooks, Pierce, McLendon, Humphrey & Leonard, LLP provided legal counsel. Raymond James & Associates, Inc. served as financial advisor to Select Bancorp, Inc., and Wyrick Robbins Yates & Ponton LLP served as legal counsel.

**Insiders' Interests in the Proposed Transaction**

26.     Select insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Select.

27.     Notably, certain Company insiders have secured positions for themselves with the combined company. For example, the Merger Agreement provides that First Bancorp will increase the size of the First Bancorp board to 15 members and will appoint two current members of the Select Board, as designated by Select and approved by First Bancorp, to the boards of directors of First Bancorp and First Bank.

28.     Moreover, First Bancorp has entered into employment agreements and consulting agreements with defendant Hedgepeth and Lynn H. Johnson, Executive Vice President ("EVP") and Chief Operating Officer ("COO") of Select and Select Bank.  The employment agreements provide for the employment of defendant Hedgepeth and Ms. Johnson as EVPs of First Bank, for a period commencing upon the effective time of the merger and ending June 30, 2022 and June 11, 2022, respectively.

29.     In addition, First Bancorp has entered into employment agreements and consulting agreements with defendant Hedgepeth and Lynn H. Johnson, Executive Vice President ("EVP") and Chief Operating Officer ("COO") of Select and Select Bank.  The employment agreements provide for the employment of defendant Hedgepeth and Ms. Johnson as EVPs of First Bank, for a period commencing upon the effective time of the merger and ending June 30, 2022 and June 11, 2022, respectively.  The consulting agreements provide that the executives will provide consulting services and advice to First Bancorp and First Bank for a period of two years following the expiration of the employment period under their respective employment agreements.

30.     Further, if they are terminated in connection with the Proposed Transaction, Select insiders stand to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| Name | Cash ($)[1] | Equity ($)[2] | Pension NQDC ($)[3] | Total ($) |
|---|---|---|---|---|
| William L. Hedgepeth II | 605,097 | 662,810 | 965,840 | 2,233,747 |
| Lynn H. Johnson | 127,508 | 240,165 | 717,621 | 1,085,294 |
| Mark A. Jeffries | 574,487 | 168,320 | — | 742,807 |
| W. Keith Betts | 606,528 | 136,520 | — | 743,048 |
| R. Richard Tobin, Jr. | 653,643 | 128,260 | — | 781,903 |

**The Proxy Statement Contains Material Misstatements and Omissions**

31. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Select's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction.

32. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the financial projections for Select, First Bancorp, and the pro forma combined company, which are wholly omitted, and the data and inputs underlying the financial analyses performed by the Company's financial advisor Raymond James; (ii) Raymond James's potential conflicts of interest; and (iii) the background of the Proposed Transaction.

***Material Omissions Concerning Select's, First Bancorp's, and the Pro Forma Combined Company's Financial Projections and Raymond James's Financial Analyses***

33. The Proxy Statement wholly omits the financial projections for Select, First Bancorp, and the pro forma combined company.

34. For example, the Proxy Statement sets forth "[i]n connection with its review of the proposed merger and the preparation of its opinion," Raymond James:

> reviewed certain information related to the historical condition and prospects of Select and First Bancorp, as made available to Raymond James by or on behalf of Select, including, but not limited to, (a) **financial projections for each of Select and First Bancorp certified by the management of Select** (which we refer to in this section together, as the "Projections") and (b) **certain forecasts and estimates of potential cost savings, operating efficiencies, revenue effects, and other pro forma financial adjustments expected to result from the merger, which were authorized and reviewed by the management of Select** (which we refer to in this section as the "Pro Forma Financial Adjustments")[.]

Proxy Statement at 46 (emphasis added). The Proxy Statement fails, however, to disclose *any* financial projections for Select or First Bancorp. The Proxy Statement similarly fails to

disclose the "forecasts and estimates of potential cost savings, operating efficiencies, revenue effects, and other pro forma financial adjustments" for the pro forma combined company.

35. The Proxy Statement also fails to disclose material information concerning Raymond James's financial analyses.

36. The Proxy Statement describes Raymond James's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Raymond James's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Select's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Raymond James's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

37. With respect to Raymond James's *Discounted Cash Flow Analysis* of Select and First Bancorp, the Proxy Statement fails to disclose: (i) the Select and First Bancorp forecasts utilized by Raymond James in the analysis, including (a) the cash flows (or other financial metric) that were discounted back in the analyses over the projection period, and (b) the calendar year 2026 earnings used to derive the terminal value; (ii) quantification of the terminal values for Select and First Bancorp; and (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 11% to 13% for Select and 10% to 12% for First Bancorp.

38. With respect to Raymond James's *Selected Companies Analysis* and *Selected Transaction Analysis* for each of Select and First Bancorp, the Proxy Statement fails to disclose the individual multiples and financial metrics for each company and transaction observed in the respective analyses.

39. With respect to Raymond James's *Pro Forma Impact Analysis*: (i) the projected balance sheet and 2022 and 2023 estimated earnings per share information of First Bancorp and Select utilized, including: (a) the closing balance sheet estimates as of December 31, 2021 for First Bancorp and Select based on Select management estimates, (b) the Select and First Bancorp projections for the years ending 2022 and 2023, and (c) the "Pro Forma Financial Adjustments" for the combined company (ii) the amount of dilution to Select's estimated tangible book value per share, as adjusted for the exchange ratio reflected in the merger consideration, at December 31, 2021; and (iii) the amount of accretion to Select's estimated 2022 and 2023 earnings per share and estimated 2022 dividends per share, as adjusted for the exchange ratio reflected in the merger consideration.

40. The omission of this information renders the statements in the "Opinion of Select's Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Raymond James's Potential Conflicts of Interest***

41. The Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by the Company's financial advisor, Raymond James.

42. For example, according to the Proxy Statement:

> During the two years preceding the date of Raymond James's written opinion, (i) Raymond James has engaged in certain fixed income trading activity with Select Bank, a subsidiary of Select, **for which it has earned income**, (ii) Raymond James has conducted certain share repurchases on behalf of Select, **for which it has earned fees**, and (iii) Raymond James has engaged in certain fixed income trading activity with First Bank, a subsidiary of First Bancorp, **for which it has earned income**.

*Id.* at 52 (emphasis added). Yet, the Proxy Statement fails to disclose a quantification of the income or fees that Raymond James has received in connection with the services provided to

Select and First Bancorp, or their affiliates, in the two years preceding the date of its written opinion.

43. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

44. The omission of this information renders the statements in the "Opinion of Select's Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning the Background of the Proposed Transaction*

45. The Proxy Statement omits material information regarding the background process leading to the Proposed Transaction.

46. For example, the Proxy Statement fails to disclose whether the non-disclosure agreement the Company entered into with a party identified in the Proxy Statement as "Bank B" (*id.* at 41), or any other parties involved in the sale process, include "don't-ask, don't-waive" ("DADW") standstill provisions that are still in effect and presently precluding any interested parties from submitting a topping bid for the Company.

47. The failure to disclose the existence of DADW provisions creates the false impression that a potential bidder who entered into a non-disclosure agreement could make a superior proposal for the Company. If the potential acquirer's non-disclosure agreement contains a DADW provision, then that potential bidder can only make a superior proposal by (a) breaching the confidentiality agreement—since in order to make the superior proposal, it would have to ask for a waiver, either directly or indirectly; or by (b) being released from the agreement, which if action has been done, is omitted from the Proxy Statement.

48. Any reasonable Select stockholder would deem the fact that a likely topping bidder for the Company may be precluded from making a topping bid for the Company to significantly alter the total mix of information.

49. The Proxy Statement also fails to disclose the details of the "pricing indications [] from Bank A, Bank B, and Bank C" (*id.*) received by the Company during the process leading up to the Proposed Transaction.

50. The omission of this material information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

51. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Select will be unable to make a sufficiently informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

52. Plaintiff repeats all previous allegations as if set forth in full.

53. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the

statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

54.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the financial projections for the Company, First Bancorp, and the combined company, Raymond James's financial analyses, Raymond James's potential conflicts of interest, and the background of the Proposed Transaction.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

55.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

56.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

57.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

58.     Plaintiff repeats all previous allegations as if set forth in full.

59.     The Individual Defendants acted as controlling persons of Select within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as

officers and/or directors of Select, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

60.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

61.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

62.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

63.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

64. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Select stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Select, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Select stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: September 8, 2021                                    **WEISSLAW LLP**

                                                            By  */s/ Richard A. Acocelli*
                                                            Richard A. Acocelli
                                                            1500 Broadway, 16th Floor
                                                            New York, New York 10036
OF COUNSEL:                                                 Tel: (212) 682-3025
                                                            Fax: (212) 682-3010
**LONG LAW, LLC**                                           Email: racocelli@weisslawllp.com
Brian D. Long
3828 Kennett Pike, Suite 208                                *Attorneys for Plaintiff*
Wilmington, DE 19807
Tel.: (302) 729-9100
Email: bdlong@longlawde.com